Argued and submitted May 29, 2019; convictions on Counts 2, 3, and 4 reversed and remanded, convictions on Counts 1 and 6 vacated and remanded, otherwise affirmed January 27; on appellant's petition for reconsideration filed February 2, petition for reconsideration allowed by opinion March 10, 2021
See 309 Or App 784, 483 P3d 59 (2021)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE ANTONIO HERNANDEZ,
*Defendant-Appellant.*

Marion County Circuit Court
16CR65578; A166220

481 P3d 959

In this criminal case, defendant appeals from a judgment of conviction for two counts of fleeing or attempting to elude a police officer (Counts 1 and 6); attempted aggravated murder with a firearm (Count 2); unlawful use of a weapon with a firearm (Count 3); and felon in possession of a firearm (Count 4). Defendant argues that the trial court erred by denying his suppression motion because the warrant authorizing the search of his cell phones lacked probable cause and was overbroad in violation of the state constitution. Additionally, defendant challenges the trial court's denial of his request to waive a jury trial. In supplemental briefing, defendant argues that, under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), the trial court plainly erred in instructing the jury that it could return nonunanimous verdicts and when it accepted a nonunanimous verdict on Count 2. *Held*: The search warrant was insufficient to establish probable cause to search defendant's phones and the denial of the suppression motion was not harmless as to Counts 2, 3, and 4. The Court of Appeals further concluded that the record did not reflect that the trial court analyzed all of the relevant factors before denying defendant's jury trial waiver. Finally, given the disposition on the suppression motion, the court did not reach defendant's *Ramos* arguments as to Counts 2, 3, and 4, and the court further rejected defendant's structural-error challenge as to the unanimous verdicts for Counts 1 and 6.

Convictions on Counts 2, 3, and 4 reversed and remanded; convictions on Counts 1 and 6 vacated and remanded; otherwise affirmed.

J. Channing Bennett, Judge.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Sercombe, Senior Judge.

POWERS, J.

Convictions on Counts 2, 3, and 4 reversed and remanded; convictions on Counts 1 and 6 vacated and remanded; otherwise affirmed.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment of conviction for two counts of fleeing or attempting to elude a police officer, ORS 811.540 (Counts 1 and 6); attempted aggravated murder with a firearm, ORS 161.405, ORS 163.095, and ORS 161.610 (Count 2); unlawful use of a weapon with a firearm, ORS 166.200 and ORS 161.610 (Count 3); and felon in possession of a firearm, ORS 166.270 and ORS 161.610 (Count 4).[1] In his first assignment of error, defendant challenges the trial court's denial of his motion to suppress texts, Facebook messages, and pictures found as a result of the execution of a search warrant of his cell phones. Specifically, defendant argues that the affidavit in support of the search warrant lacked probable cause and was overbroad in violation of Article I, section 9, of the Oregon Constitution. In his third assignment of error, defendant challenges the trial court's denial of his request to waive a jury trial and argues that the court's denial violated Article I, section 11, of the Oregon Constitution. In supplemental briefing, defendant argues that, under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), the trial court plainly erred in instructing the jury that it could return nonunanimous verdicts and when it accepted a nonunanimous verdict on Count 2. As explained below, we conclude that the affidavit was insufficient to establish probable cause to search defendant's phones and that the denial of the suppression motion was not harmless as to the convictions for attempted murder, unlawful use of a weapon, and felon in possession of a firearm.[2] We further conclude that the record does not reflect that the trial court analyzed all of the relevant factors before denying defendant's jury trial waiver that arose during the middle of trial. Finally, we need not reach defendant's *Ramos* arguments as to Counts 2, 3, and 4, given our disposition on the suppression motion and we reject defendant's structural-error challenge as to the unanimous verdicts for Counts 1 and 6. Accordingly, we reverse and remand the judgment of

---

[1] The trial court granted defendant's motion for judgment of acquittal on Count 5, felon in possession of a restricted weapon.

[2] Our resolution of defendant's first assignment of error obviates the need to address defendant's second assignment of error concerning sentencing.

conviction on Counts 2, 3, and 4; vacate and remand Counts 1 and 6; and otherwise affirm.

We review a challenge to the validity of a search warrant for legal error. *State v. Cannon*, 299 Or App 616, 625, 450 P3d 567 (2019). In reviewing whether a search warrant was supported by probable cause, "we consider only those facts put before the magistrate in the supporting affidavit, along with reasonable inferences that can be drawn from them." *Id*. at 618. We state the facts as recited in the search warrant affidavit that was prepared by Detective Howden.

In October 2016, Sergeant Goodman observed a red Honda and a gray Honda traveling northbound on River Road in Salem. Goodman's attention was drawn to the red Honda, later determined to be driven by defendant, because it was "traveling in excess of the posted 35 mph speed limit." As Goodman traveled behind both Hondas, he ran a check on the license plate number of the red Honda and discovered that the car's insurance had expired. Goodman activated his lights to conduct a traffic stop of defendant for speeding and driving uninsured. Defendant changed lanes and slowed as if he were going to come to a stop, but, before Goodman could change lanes to pull defendant over, the gray Honda rapidly accelerated and attempted to block Goodman from getting directly behind the red Honda. In his police report, Goodman noted that "[i]t was very obvious the driver of the gray Honda was attempting [to] draw my attention to him and away from the red Honda."

As Goodman attempted to drive around the gray Honda to get behind defendant's red Honda, Goodman radioed for additional police to respond. Defendant eventually turned into a Safeway parking lot and, as the car was still moving, he jumped out of the car and ran. Goodman noted that, as defendant exited the car, he "squared his shoulders" toward Goodman in a "pistol shooting stance." Goodman could see "a large unknown black object" in defendant's hand, but, because of the poor lighting, he could not be "100% sure the object in [defendant's] hand was a handgun." Goodman wrote in his police report that "it appeared [defendant] was attempting to fire the weapon he was pointing at

me, but for an unknown reason the handgun did not discharge." As defendant was running away from Goodman, he dropped the gun, retrieved the gun from the ground, and subsequently dropped the gun again as he fell through some bushes. When more officers arrived at the scene, defendant finally gave up his attempt to flee, and Goodman took defendant into custody. Afterwards, officers conducted a search of the area and found a woman's watch, defendant's hat, two cell phones, and a Colt 1911 pistol.

Based on the foregoing events, Howden submitted an affidavit seeking to search, seize, and analyze the two cell phones found by the officers for evidence of the crimes alleged against defendant: attempted murder, unlawful use of a weapon, felon in possession of a weapon, felon in possession of a restricted weapon, and fleeing or attempting to elude an officer. Specifically, the affidavit sought to search six categories of information on the phones: communication data; images, audio, and multimedia files; internet-based artifacts; user interaction and digital device information; hidden, encrypted, password protected data; and location information.

In addition to recounting the events of defendant's arrest, the affidavit also described two recorded phone calls that defendant made from jail a couple of days after his arrest concerning his phone: (1) When asked whether he had someone's telephone number, defendant stated, "Uh I don't even have my phone. I fucking, my phone got lost, threw it." (2) When asked whether they got him a new phone, defendant replied, "No."[3] The affidavit further provided a detailed description of the six categories of information sought by detectives, and why, in Howden's training and experience, evidence of defendant's suspected crimes would be found in each category of information sought. For example, regarding communication data, Howden averred:

"I know from my training and experience that suspects of Attempted Murder, Unlawful Use of a Weapon, Felon in

_____

[3] In the recorded jail calls, defendant referenced only one phone, even though officers recovered and executed a warrant to search two phones. Because defendant does not highlight that discrepancy, we do not address it. We refer to the phones collectively, unless we are quoting defendant's jail calls.

Possession of a Firearm, Felon in Possession of a Restricted Weapon, and Fleeing or Attempting to Elude a Police Officer will often communicate with others regarding buying or selling weapons and firearms. I also know those persons will often communicate about their opinions of law enforcement and about what they would do if the police attempted to apprehend them. I also know that viewing the communications of those suspects often gives a glimpse into the mindset, temperament, and intent of that person."

Similarly, regarding images, audio, and multimedia files, Howden stated:

"I know from my training and experience that suspects of Attempted Murder, Unlawful Use of a Weapon, Felon in Possession of a Firearm, Felon in Possession of a Restricted Weapon, and Fleeing or Attempting to Elude a Police Officer will often take photos and videos of them possessing firearms and weapons. I also know they will often take photos of firearms and weapons to show to others, via electronic communication, for the purposes of selling and/or trading those firearms and weapons."

Based on Howden's affidavit, a magistrate approved the search warrant. In executing the warrant, officers seized several texts, Facebook messages, and pictures.

Defendant moved to suppress the evidence found on his phones under Article I, section 9, and the Fourth Amendment to the United States Constitution, asserting among other arguments that the affidavit did not establish probable cause to search the phones.[4] Defendant contended that the events surrounding his arrest were the result of a spontaneous encounter and not a planned occurrence. As such, defendant argued that there was no evidence that he "had planned to try [to] elude and shoot at Goodman" on the night in question. Further, because the firearm was already in police possession, defendant asserted that the police had all the evidence necessary to charge him. The trial court denied the motion and, following a jury trial, entered a judgment of conviction for the offenses described above.

---

[4] Because we decide the case on probable cause grounds, we do not address defendant's arguments that the warrant was overbroad.

On appeal, defendant largely renews the suppression arguments that he made before the trial court with respect to Counts 2, 3, and 4.[5] Specifically, defendant asserts that "nothing in the affidavit indicates that defendant's phones played any role in the events of October 14, 2016." Apart from recounting the events and defendant's jail phone calls, defendant contends that "the entire premise of Howden's affidavit is what 'often' happens or 'may' happen and what it is 'possible' to recover from a device." Those "abstract assertions," according to defendant, are not connected to the "specific facts or circumstances of this case." The state argues that the affiant's training and experience established that "someone who obtains a firearm illegally (because his felon status precludes legal means of doing so) or for use in conjunction with crimes will use the internet and electronic communication to facilitate a non-traditional purchase." The state contends that that "general likelihood was elevated by other objective facts"—mainly defendant's jail calls. Finally, the state asserts that any error was harmless because "the record contained ample other evidence connecting defendant to the firearm at issue."

Article I, section 9, provides, in part, that "no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Probable cause exists when the facts set out in the affidavit, along with any reasonable inferences, permit a neutral and detached magistrate to determine that seizable evidence will probably be found in the location to be searched. *State v. Goodman*, 328 Or 318, 325, 975 P2d 458 (1999). The standard of probability "requires more than a mere possibility, but less than a certainty." *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001) (internal citations omitted).

---

[5] In his brief on appeal, defendant mentions the Fourth Amendment in passing but he does not make any separate arguments under the federal constitution. Accordingly, because his arguments on appeal are based solely on Article I, section 9, we likewise consider whether only the state constitution requires suppression. *See State v. McKee*, 272 Or App 372, 376 n 2, 356 P3d 651 (2015) (declining to address undeveloped Fourth Amendment claim); *State v. Kinkade*, 247 Or App 595, 599 n 1, 270 P3d 371 (2012) (same). Further, although the suppression motion applied to all of the charges, defendant narrows his focus on appeal such that he seeks reversal of only Counts 2, 3, and 4, noting that he did not contest the elude charges in his opening and closing statements.

Defendant does not controvert or otherwise challenge any of the facts articulated in the affidavit. Therefore, we accept those facts as true, as well as any inferences that the issuing magistrate reasonably could have drawn from them to determine whether the affidavit established probable cause for the search. *State v. McNutt*, 303 Or App 142, 146-47, 463 P3d 563, *rev den,* 367 Or 115 (2020). "[W]e look at the totality of the circumstances presented in the affidavit, and we resolve doubtful or marginal cases in favor of the preference for warrants[.]" *State v. Miser*, 303 Or App 347, 352, 463 P3d 599, *rev den*, 366 Or 827 (2020) (internal quotation marks and citations omitted). Accordingly, the question becomes a legal one: Did the facts in the affidavit and all reasonable inferences that can be drawn from those facts establish probable cause that the two cell phones contained evidence of attempted murder, unlawful use of a weapon, or felon in possession of a firearm?

To answer that question, we focus on three facts set out in the affidavit: (1) defendant dropped the phones while attempting to evade police; (2) defendant disclosed, in a recorded telephone call made from jail, that he "threw" his phone and appeared upset that it was lost; and (3) Howden knows from his training and experience that suspects of these types of crimes use digital devices to "often communicate with others regarding buying or selling weapons and firearms," and to "often take photos and videos of them possessing firearms and weapons." Taken together, those facts fail to establish probable cause to search defendant's phones.

The affidavit established that defendant had possession of the phones during the underlying incident and that he threw his phones while running from police. The recorded jail calls also establish that defendant was upset that his phones were lost. Those facts, however, do not otherwise establish that evidence of the crimes would be found on those phones. For instance, the affidavit does not suggest that defendant used his phones to communicate with others during the course of the police chase nor did the circumstances in this case that gave rise to the crimes under investigation—attempted murder, unlawful possession of a firearm, and felon in possession of a firearm—depend upon the use of cell phones. Rather, the affidavit relies on

Howden's training and experience to allege the potential presence of incriminating evidence on defendant's phones, *i.e.*, that suspects of attempted murder and felon in possession of a firearm "often" use their phones in the course of committing those crimes. Such general assertions cannot support a nonspeculative inference that evidence of defendant's suspected crimes would be found on his phones. *See State v. Williams*, 270 Or App 721, 727, 349 P3d 616 (2015) (stating that an "abstract assertion that people involved in firearm crimes often place evidence in vehicles is insufficient to show a probability that someone placed evidence in a car that had no connection to the crime other than the fact that it was used to transport a shooting victim" (emphasis omitted)). Accordingly, because the affidavit failed to substantiate a probability that evidence of defendant's suspected crimes would be found on the phones, the trial court erred in denying defendant's motion to suppress.

We further conclude that the error was not harmless as to the attempted murder, unlawful use of a weapon, and felon in possession of a firearm convictions, Counts 2, 3, and 4. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (explaining that, under Article VII (Amended), section 3, of the Oregon Constitution, we will affirm a judgment if there is "little likelihood that the particular error affected the verdict"). The state offered into evidence several texts and Facebook messages where defendant appeared to be communicating about firearms with other people. Along with the messages, the state also introduced an incriminating picture tying defendant to the watch that he dropped and that the police later recovered. During closing and rebuttal arguments, the state called attention to that evidence, arguing that it connected defendant to both the watch and the firearm found at the scene and that the messages supplemented and corroborated evidence demonstrating defendant's guilt. Although, as the state argues, there is other evidence of defendant's guilt, we do not, in our harmless error analysis, simply reweigh the evidence in light of the trial court's error; rather, the question before us is whether, given the erroneously admitted evidence and the state's use of that evidence, the error had little likelihood of affecting the jury's verdict. *See Davis*, 336 Or at 32 ("The correct focus

of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling."). In light of the state's use of the texts and Facebook messages, we cannot conclude that there was little likelihood that the error affected the jury's verdicts. Accordingly, we reverse and remand the convictions on Count 2, 3, and 4, for a new trial.

Defendant also argues that the trial court erred in denying his midtrial request to waive a jury trial because it failed to apply the "proper legal principles" outlined in *State v. Harrell/Wilson*, 353 Or 247, 297 P3d 461 (2013). The state, in turn, agrees that the "trial court failed to create a record analyzing the relevant factors," but contests defendant's assertion that allowing defendant's waiver was the only option available to the court. We review the court's refusal for an abuse of discretion, *id*. at 253-54, and agree that the record fails to reflect whether the trial court's refusal to consent to defendant's jury trial waiver was within the bounds of discretion outlined in *Harrell/Wilson*.

Article I, section 11, provides that, "[i]n all criminal prosecutions, *** any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone[.]" Therefore, "[u]nder the Oregon Constitution, criminal defendants possess both the right to be tried by a jury and the concomitant right—albeit bounded by judicial consent—to waive that jury trial guarantee in favor of a bench trial." *Harrell/Wilson*, 353 Or at 252 (emphasis omitted).

"In the context of deciding whether to grant a defendant's request to waive a jury trial, a trial court's exercise of judicial discretion must 'fall within a permissible range of legally correct outcomes' within the confines of Article I, section 11." *State v. Ames,* 298 Or App 227, 236, 445 P3d 928 (2019) (quoting *Harrell/Wilson*, 353 Or at 254 (brackets omitted)). Specifically, "a trial court should evaluate a criminal defendant's decision to waive trial by jury in the context of improving judicial economy, taking into account considerations of speed, economy, and the prosecutor's expressed

preference for or against defendant's waiver, and the continued protection of the defendant's rights." *Harrell/Wilson*, 353 Or at 264. Finally, "the paramount consideration remains whether a bench trial will fully protect a defendant's rights." *State v. Austin,* 274 Or App 114, 120, 360 P3d 603 (2015) (internal quotation marks and brackets omitted).

Here, defendant asserted his right to waive a jury trial midtrial, after the trial court had decided to admit evidence it had previously indicated it would likely find inadmissible. In denying defendant's request to waive a jury trial, the court gave the following explanation:

> "And what I explained to your attorney was that I'm not comfortable at this stage of the trial, I'll note the State objected, but the State also rightly pointed out they don't have any real say in this, it's my decision, I told your attorney I'm not comfortable doing that at this stage of the trial, we've had the jury sit here for two days, I don't think—so I'm not going to let you waive jury as to me, so I appreciate that you want to do that and that may be a change, but I'm not going to allow that based on jury's heard two days of testimony and that's why I'm going to allow them to make a decision."

Although the trial court weighed some judicial economy considerations around excusing the jury after two days of trial, the court's articulated reason was insufficient to deny defendant consent to waive his right to a jury trial. That is, the court failed to evaluate whether a bench trial would fully protect defendant's rights. *See Ames*, 298 Or App at 237 (observing that, when considering whether to consent to a jury waiver, "the trial court's focus, with regard to protecting a defendant's rights, should be on whether a defendant's jury waiver is valid; that is, whether the waiver is voluntarily and knowingly made"). Therefore, because the record does not reflect that the trial court analyzed all of the relevant factors, we also vacate Counts 1 and 6, and remand to the trial court to reconsider defendant's jury trial waiver. *See Austin*, 274 Or App at 126 (remanding to the trial court to reconsider jury waiver in accordance with *Harrell/Wilson*).

Finally, in supplemental briefing, defendant argues that the trial court plainly erred under a structural error

theory when it instructed the jury that it could return nonunanimous verdicts and that the trial court erred when it accepted a 10-2 verdict on Count 2, attempted aggravated murder with a firearm. After briefing and argument in this case, the Supreme Court of the United States decided *Ramos*, and the state now concedes that Count 2 should be reversed but maintains that the remaining convictions, which were unanimous, should be affirmed. More recently, the Oregon Supreme Court rejected the argument that the error in instructing the jury that it could return nonunanimous guilty verdicts required reversal of convictions rendered by unanimous guilty verdicts. *State v. Flores Ramos*, 367 Or 292, 294, 334, 478 P3d 515 (2020) (holding that the trial court's instruction to the jury that it could return a nonunanimous verdict did not amount to a structural error and was harmless beyond a reasonable doubt as to the convictions based on unanimous verdicts); *State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020) (same). Given our conclusion set out above that the convictions on Counts 2, 3, and 4 must be reversed and remanded in light of the erroneous suppression ruling, we need not reach any *Ramos* issue as to those counts. Further, we reject defendant's challenge to the convictions on Counts 1 and 6 based on *Flores Ramos* and *Kincheloe*.

Convictions on Counts 2, 3, and 4 reversed and remanded; convictions on Counts 1 and 6 vacated and remanded; otherwise affirmed.