Argued and submitted August 11, 2020; convictions on Counts 1, 2, 3, 4, 5, and 7 reversed and remanded, remanded for resentencing, otherwise affirmed March 31, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

COREY ALAN BOCK,
*Defendant-Appellant.*

Washington County Circuit Court
17CR41800; A169480

485 P3d 931

Defendant appeals a judgment of conviction for three counts of attempted aggravated murder with a firearm, ORS 161.405(2)(a), ORS 163.095, and ORS 161.610 (Counts 1, 2, and 3); attempted murder with a firearm, ORS 161.405(2)(a), ORS 163.115, and ORS 161.610 (Count 4); assault in the second degree, ORS 163.175 (Count 5); burglary in the first degree, ORS 164.225 (Count 6); felon in possession of a firearm, ORS 166.270 (Count 7); and interfering with a peace officer, ORS 166.247 (Count 8). Defendant assigns error to the trial court's denial of his motion to suppress evidence because the warrant authorizing a search of his cell phone violated the particularity requirement of Article I, section 9, of the Oregon Constitution, the trial court's decision to provide jury instructions that would allow the jury to assess self-defense from the victim's perspective, the trial court's instruction to the jury that it could return nonunanimous verdicts, and the trial court's acceptance of nonunanimous verdicts on Counts 2, 3, and 5. *Held*: The trial court erred in three respects: first, by admitting the gun photo when police were not authorized to search for and use it under either the search warrant or the plain view doctrine; second, by instructing the jury on self-defense from the victim's perspective; and third, by instructing on and accepting nonunanimous verdicts on Counts 2, 3, and 5. Those errors require reversal of all of defendant's convictions apart from his convictions for burglary in the first degree on Count 6 and interference with a peace officer on Count 8, which, the Court of Appeals concluded, were unaffected by the trial court's errors.

Convictions on Counts 1, 2, 3, 4, 5, and 7 reversed and remanded; remanded for resentencing; otherwise affirmed.

Eric Butterfield, Judge.

Lindsey Burrows argued the cause for appellant. Also on the briefs was O'Connor Weber LLC.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Kamins, Judge, and Kistler, Senior Judge.

KAMINS, J.

Convictions on Counts 1, 2, 3, 4, 5, and 7 reversed and remanded; remanded for resentencing; otherwise affirmed.

Kistler, S. J., concurring in part and concurring in the judgment in part.

**KAMINS, J.**

We are once again confronted with a question about the scope and mechanics of the search of a cell phone. Based in part on evidence obtained from a warranted search of his cell phone, defendant was convicted of three counts of attempted aggravated murder with a firearm, ORS 161.405(2)(a), ORS 163.095, and ORS 161.610 (Counts 1, 2, and 3); attempted murder with a firearm, ORS 161.405 (2)(a), ORS 163.115, and ORS 161.610 (Count 4); assault in the second degree, ORS 163.175 (Count 5); burglary in the first degree, ORS 164.225 (Count 6); felon in possession of a firearm, ORS 166.270 (Count 7); and interfering with a peace officer, ORS 166.247 (Count 8). Defendant makes eight assignments of error, only six of which we discuss in detail.[1] In his first and second assignments, defendant argues that the trial court erred in denying his motions to suppress evidence because the warrant authorizing a search of his cell phone violated the particularity requirement of Article I, section 9, of the Oregon Constitution. In his third and fourth assignments, defendant argues that the trial court erred in providing instructions that would allow the jury to assess self-defense from the victim's perspective. And finally, in his fifth and sixth assignments, defendant argues that the trial court erred in instructing the jury that it could return nonunanimous verdicts and by accepting nonunanimous verdicts on Counts 2, 3, and 5.

We conclude that the trial court erred in all three respects. Accordingly, we reverse and remand all of defendant's convictions apart from Counts 6 and 8, burglary in the first degree and interference with a peace officer, which were unaffected by the errors.

---

[1] In defendant's seventh assignment of error, he argues that the trial court erred in denying his demurrer because it is impossible to attempt the crime of aggravated murder. We recently rejected that argument in *State v. Kyger*, 305 Or App 548, 554, 471 P3d 764 (2020). In his eighth assignment of error, defendant argues that the trial court erred in failing to merge his guilty verdict on Count 1 for attempted aggravated murder with his guilty verdict on Count 4 for attempted murder. In light of our disposition on the other assignments of error, we need not reach the issue of merger because the jury may reach a different verdict on remand.

## I.   STANDARD OF REVIEW

Because much of our decision involves review of the denial of a motion to suppress, we state the facts as found expressly or implicitly by the trial court. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We also supplement additional procedural information as necessary for review of other issues. Substantively, we review a trial court's legal conclusions in denying a motion to suppress for errors of law. *State v. Stephens*, 184 Or App 556, 560, 56 P3d 950 (2002), *rev den*, 335 Or 195 (2003). Likewise, we review jury instructions for errors of law. *State v. Poitra*, 261 Or App 818, 820, 323 P3d 563 (2014).

## II.   ANALYSIS

On May 27, 2017, the victim was returning home with his 12-year-old daughter when he was attacked in his driveway by two men, defendant and Onofre. Over the course of the attack, the victim was punched several times and shot at when he attempted to flee. Ultimately, the victim and his daughter were able to get inside the victim's home safely and fend off the attackers until police arrived.

A.   *Cell Phone Search Warrant*

After arresting defendant and Onofre, police searched the vehicle that the two men had driven to the victim's home and found a cell phone. Believing that the cell phone might contain evidence relevant to the investigation, police obtained a warrant to search the device for four categories of information:

"[(1)]   Any evidence identifying the owner/user of the device.

"[(2)]   Any records of communication sent or received by [defendant] between 05/26/17 and 05/27/17. * * *

"[(3)]   Any location information for the device between 05/26/17 and 05/27/17. * * *

"[(4)]   Any other evidence related to the investigation of Attempted Murder (ORS 161.405), Attempted Assault I (ORS 161.405), Assault II (ORS 163.175), Unlawful Use of a Weapon (ORS 166.220) and Unlawful Possession Firearm-Felon (ORS 166.250) occurring on 05/27/17."

The search uncovered a photo that the state sought to introduce at trial. The photo depicted a firearm resembling one that police found discarded near the crime scene. Defendant objected to the introduction of the photo, arguing that the warrant violated the particularity requirement of Article I, section 9, of the Oregon Constitution. The trial court denied the motion, concluding that the warrant was sufficiently particular.

On appeal, defendant assigns error to the trial court's decision. He argues that the gun photo should have been suppressed because neither of the two search commands encompassing the gun photo—the command to search for evidence of the owner or user of the device or the command to search for any evidence of the crimes under investigation—satisfies Article I, section 9's particularity requirement.[2]

Article I, section 9, of the Oregon Constitution provides, in relevant part, that a search warrant must "particularly describ[e] the place to be searched, and the person or thing to be seized." The framers adopted the particularity requirement to prohibit the use of "general warrants" like those employed by the English colonial government that give the bearer "an unlimited authority to search and seize." *State v. Carter*, 342 Or 39, 43-44, 147 P3d 1151 (2006). Particularity is made up of two distinct components: specificity and overbreadth. *State v. Friddle*, 281 Or App 130, 137, 381 P3d 979 (2016). A warrant must be specific enough to allow an officer, with reasonable effort, to identify the place to be searched and the items to be seized. *State v. Blackburn/Barber*, 266 Or 28, 35, 511 P2d 381 (1973). The warrant also must not authorize a search broader than its supporting materials provide probable cause to justify. *State v. Reid*, 319 Or 65, 71, 872 P2d 416 (1994).

In *State v. Mansor*, 363 Or 185, 214, 421 P3d 323 (2018), the Oregon Supreme Court recognized that some of the unique characteristics of electronic devices have implications for how these principles apply during electronic

___

[2] Defendant does not challenge the particularity of either the second or third search commands, which authorized a search for communications records and location data from 05/26/17 to 05/27/17.

searches. Unlike in the physical world where different storage spaces are used for particular purposes, inside computers "there is 'no way to know ahead of time where *** a particular file or piece of information may be located.'" *Id.* (quoting Orin S. Kerr, *Digital Evidence and the New Criminal Procedure*, 105 Colum L Rev 279, 303 (2005)) (omission in original). Accordingly, rather than identifying where a particular item will be located on a computer or what form it will take, Article I, section 9, requires an electronic search warrant to "describe, with as much specificity as reasonably possible under the circumstances, *** the *information* related to the alleged criminal conduct which there is probable cause to believe will be found on the computer." *Id.* at 216 (emphasis in original). Additionally, when it is possible to limit the material searched to a particular time period, that period should also be set out in the warrant. *Id.* at 218.

Beginning with the command to search for evidence of the owner or user of the cell phone, defendant argues that the warrant is insufficiently specific because it does not include a temporal limitation on the material that is subject to seizure. The state rejoins that no temporal limitation is necessary because evidence of a device's ownership is not naturally constrained to any particular period of time. The command was, in the state's view, as specific as possible given the number of different forms of evidence of an electronic device's ownership.

Regardless of whether the command to search for evidence of the owner or user of the device included a temporal limitation on the material subject to seizure, we conclude that the search command violates the particularity requirement. Any interpretation of the search command broad enough to permit the use of *any* material discovered on the cell phone relevant to establish the device owner or user's identity is impermissibly nonspecific. A warrant without clear limitations on the material subject to search and seizure requires the executing officer to employ discretion in deciding what to search or seize. *See State v. Ingram*, 313 Or 139, 145, 831 P2d 674 (1992) (warrant authorizing a search of "all vehicles [determined to be] associated with the occupants" of the defendant's home required officers to employ discretion in deciding which vehicles to search). That, in

turn, risks "invad[ing] privacy interests not intended by the magistrate to be invaded and *** conduct[ing] searches not supported by probable cause." *Id.*

In practice, a warrant that authorizes seizure of any item on a cell phone that might later serve as circumstantial evidence of the device owner or user is tantamount to a general warrant. As the state acknowledges, "[t]he ways in which a device might be connected to a specific user are too varied to anticipate" and could include "email accounts stored on the device belong[ing] to a particular person, *** a certain person's social media or financial accounts, *** photographs of a particular person and his family, or *** any other pattern or usage uniquely attributable to a particular person." Indeed, there is little information on the device that the state *could not* use to identify the defendant given the right circumstances and background information. Under such circumstances, the officer performing the search has the discretion to rummage freely throughout the device and seize nearly everything—the exact practice that the particularity requirement was adopted to prohibit. Accordingly, we conclude that the command to search for evidence of the owner or user of the cell phone is invalid.

Next, we turn to the fourth command authorizing a search for all evidence of the various offenses that police were investigating.[3] Defendant argues that this command is also insufficiently particular because, under *Mansor*, a warrant must do more than simply name the offenses under investigation to satisfy the particularity requirement. The state responds that, at a minimum, the portion of the command directing a search for all evidence of felon in possession of a firearm—which would encompass the gun photo— was inherently specific enough about the evidence subject to seizure. *See State v. Savath*, 298 Or App 495, 502-03, 447 P3d 1, *rev den*, 365 Or 722 (2019) (suggesting that a warrant to search for evidence of possession of child pornography was sufficiently specific because a reasonable officer would have known to search for "contraband images and communications soliciting or exchanging such images").

---

[3] Because defendant did not argue that the warrant fails to establish probable cause that evidence of gun ownership would be found on the phone, we do not reach the analysis raised in the concurrence.

We conclude that this command is also invalid. Both we and the Supreme Court have explained that a warrant authorizing a search for all "evidence of a particular crime" is not sufficiently specific to pass constitutional muster. *Id.* at 502; *Mansor*, 363 Or at 213. In *Savath*, although we acknowledged the validity of the command in *State v. Rose* to search through "[a]ny and all contents of electronic files" in the defendant's email account for child pornography, we rejected a general rule that all commands to search for evidence of possession offenses are sufficiently specific. *Savath*, 298 Or App at 502-03 (citing *State v. Rose*, 264 Or App 95, 330 P3d 680, *rev den*, 356 Or 400 (2014)). Rather, we explained that the *Rose* command satisfied the particularity requirement specifically because the electronic files were *themselves* contraband. *Id.* (citing Wayne R. LaFave, 2 *Search and Seizure* § 4.6(a), 771-72 (5th ed 2012) ("A less precise description is required of property that is, because of its particular character, contraband.")). By contrast, we concluded that the command at issue in *Savath*—to search defendant's cell phone for "all evidence" of various possession of controlled substances offenses—was invalid because those offenses "did not involve contraband that could be located on [the defendant's] cell phone." *Id.* at 503.

Here, the contraband that defendant was accused of possessing was a firearm. Like the controlled substances in *Savath*, a firearm itself cannot be located on defendant's cell phone. Accordingly, we conclude that, like the rest of the command to search for any evidence of the offenses under investigation, the section directing a search for evidence of felon in possession is insufficiently particular and therefore invalid.[4]

As an alternative to falling under the search command in the warrant, the state argues that use of the gun photo was authorized by the plain view doctrine. Under the plain view doctrine, an officer may seize an item from a place

---

[4] Without advancing significant argument, defendant also challenges the admission of a second photo taken with the cell phone showing defendant and Onofre together. At trial, the state's forensic examiner testified only that this photo was responsive to the fourth search command, which we have just concluded was invalid. Accordingly, the trial court erred in admitting this photo as well.

that the officer is permitted to be if the officer has probable cause to believe that the item is evidence of a crime. *State v. Currin*, 258 Or App 715, 718-19, 311 P3d 903 (2013). The state argues that it discovered the gun photo in plain view while it was searching the phone's photos for location data pursuant to the third search command, which defendant does not challenge. Because the state knew that defendant had a prior felony conviction, forensic examiners had probable cause to believe the gun photo was evidence that defendant was a felon in possession of a firearm.

Notably, there is unresolved tension following *Mansor* about the extent to which the plain view doctrine applies to electronic searches. *Mansor* recognized that searches of digital devices often pose unique challenges for investigators. 363 Or at 197. For example, unlike when identifying items in physical searches, it is often impossible for investigators to tell whether digital files are relevant to a particular search command without opening them and examining them. *Id.* at 198. As a result, forensic examiners must be permitted to examine material beyond the scope of the warrant in order to discover all responsive data. *Id.* at 199-200.

At the same time, however, *Mansor* also recognized the danger that such broad electronic searches pose to privacy interests. *Id.* at 220. The very nature of a digital device such as a cell phone renders it a "repository with a historically unprecedented capacity to collect and store a diverse and vast array of personal information." *Id.* at 208. Accordingly, to ensure that Article I, section 9, continued to fulfill its purpose of protecting individuals' privacy and avoided "sanctioning the undue rummaging that the particularity requirement was enacted to preclude," an additional limitation on the use of data falling outside the scope of an electronic search warrant was necessary. *Id.* at 220 (internal quotation marks omitted). Specifically, the state is prohibited from introducing into evidence any "information obtained in a computer search if the warrant did not authorize the search for that information, unless some other warrant exception applies." *Id.* at 220-21. In imposing such a limitation, the *Mansor* court recognized that its decision "likely would have implications for a plain view argument,

if raised in a computer search case." *Id.* at 211. However, because the state's argument did not rely on the plain view doctrine, the court declined to address the issue. *Id.*

This case requires us to answer the question that *Mansor* did not: Can the plain view doctrine be reconciled with Article I, section 9's limitations on electronic searches? At the outset, the state acknowledges that, under *Mansor*, the plain view doctrine must at least be "more limited" in the context of digital searches, and with good reason. The digital medium undermines the rationale supporting the plain view doctrine in the first place.

To understand the rationale behind the plain view doctrine, "we [must] keep in mind the two distinct constitutional protections served by the warrant requirement": eliminating searches not based on probable cause and prohibiting "exploratory rummaging" authorized by general warrants. *Coolidge v. New Hampshire*, 403 US 443, 467, 91 S Ct 2022, 29 L Ed 2d 564 (1971), *overruled in part on other grounds by Horton v. California*, 496 US 128, 110 S Ct 2301, 110 L Ed 2d 112 (1990). The first protection is not threatened because allowing seizure of items in plain view does not authorize a search at all, let alone one not supported by probable cause. *Id.* And "the seizure of an object in plain view is consistent with the second objective, since it does not convert the search into a general or exploratory one." *Id.* Seizing an item in plain view does not interfere with a person's privacy interest by enlarging the scope of an already authorized search, much less convert it into the sort of "general, exploratory rummaging in a person's belongings" that the warrant requirement was meant to prohibit. *Id.*

Meanwhile, allowing warrantless seizures of items in plain view results in a "major gain in effective law enforcement." *Id.* When a lawful search is already in progress, it is often "a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require [police] to ignore [evidence in plain view] until they have obtained a warrant particularly describing it." *Id.* at 467-68; *see also Minnesota v. Dickerson*, 508 US 366, 375, 113 S Ct 2130, 124 L Ed 2d 334 (1993) ("The warrantless seizure of contraband [in plain view] is deemed justified by the

realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment."); *Arizona v. Hicks*, 480 US 321, 327, 107 S Ct 1149, 94 L Ed 2d 347 (1987) ("[T]he practical justification for [the plain view doctrine] is the desirability of sparing police, whose viewing of the object in the course of a lawful search is as legitimate as it would have been in a public place, the inconvenience and the risk *** of going to obtain a warrant.").

Although the rationale in *Coolidge* and subsequent cases holds up in the context of physical searches, it falters when uprooted and applied wholesale to digital searches, which, as *Mansor* recognized, require greater scrutiny to protect privacy interests. The digital medium undercuts the plain view doctrine's pivotal assumption about a defendant's interests—namely, that seizing an item in plain view involves only a "minor" intrusion. *Coolidge*, 403 US at 467. Electronic devices contain "unprecedented" amounts of personal information, and, unlike physical searches, searches of electronic devices require examination of at least some information that is beyond the scope of the warrant. *Mansor*, 363 Or at 208, 220. As a result, in an electronic search, much if not all of this unprecedented amount of personal information may come within the plain view of an investigator. Under such circumstances, allowing the state to use any incriminating evidence implicates the precise protection the plain view doctrine normally does not implicate; it effectively converts the plain view doctrine into a vehicle for the execution of a general warrant. This is exactly the type of "undue rummaging that the particularity requirement was enacted to preclude." *Id*. at 220. Allowing investigators to use evidence that comes within "plain view" during an electronic search would amount to an end of the particularity requirement so critical to cabin searches of electronic devices.

The state acknowledges this problem, but nevertheless argues that plain view still has a limited role to play in broad electronic searches. According to the state, *Mansor* provides that only materials discovered "far beyond" the scope of the warrant must be restricted to prevent the state

from benefitting fortuitously from the necessary breadth of an electronics search. Accordingly, so long as the material at issue is not discovered "far beyond" the scope of the warrant and can thus be analogized to a nondigital search, such as searching a photo album, the plain view doctrine permits state agents to use it. Because here it was already expected that state investigators would have to search through all of the cell phone's photos for location data—a type of information regularly embedded in photos—to determine whether the photos contained data from within the searchable time period, the state argues that the plain view doctrine permitted use of the gun photo when investigators discovered it, just as if the police were flipping through a photo album.

We reject the state's argument. Attempting to retrace the forensic investigator's steps to determine whether a nondigital analogue would have captured the same evidence is not only judicially unworkable, it also fails to protect the interests served by the plain view exception. *See* Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 Harv L Rev 531, 579-80 (2005) (recognizing the difficulty for courts to apply an approach that evaluates the specific forensic steps to determine whether the evidence came into plain view). Although it might have been "expected" that state agents would examine each photo on defendant's cell phone in searching for location data, that fact does not make the search for those photos somehow less invasive. The state still had to conduct a broad search of defendant's cell phone to find those photos to search them for location data in the first place. The breadth of the search is what renders the plain view doctrine inapplicable; the alternative would sanction the sort of general warrant that the plain view doctrine was never meant to authorize. *Mansor*, 363 Or at 220; *see also* Orin S. Kerr, *Executing Warrants for Digital Evidence: The Case for Use Restrictions on Nonresponsive Data*, 48 Tex Tech L Rev 1, 18 (2015) (explaining that, although electronic searches necessarily must be broad, a restriction on nonresponsive data is necessary to prevent such searches from becoming general warrants). Accordingly, the plain view doctrine did not authorize use of the gun photo, and the trial court erred in denying defendant's motion to suppress.

Having concluded that the gun photo should have been suppressed, we must next determine whether the trial court's error in admitting the photo was harmless. A trial court's error is harmless if there is "little likelihood" that it affected the jury's verdict. *State v. Lachat*, 298 Or App 579, 589, 448 P3d 670 (2019), *rev den*, 366 Or 257 (2020). Whether an error is harmless is informed by a number of considerations, including the nature and context of the error. *Id.*

Here, the state neither argues nor can we conclude that there is little likelihood that the gun photo affected the jury's verdict. Whether defendant possessed the firearm found at the scene was a central issue at trial. Defendant's primary theory of the case was that the victim had misidentified defendant as the gunman instead of Onofre. Similarly, the state's theories of attempted aggravated murder, attempted murder, assault, and felon in possession of a firearm all depended on proving that defendant possessed the gun on the day of the attack. Against that backdrop, it is likely that the jury's verdict depended at least in part on the fact that a photo of a gun resembling the one at the scene had been found on defendant's cell phone. Accordingly, we must reverse defendant's attempted aggravated murder, attempted murder, assault, and felon in possession of a firearm convictions on Counts 1, 2, 3, 4, 5, and 7.

Defendant's two remaining convictions—burglary in the first degree and interfering with a peace officer—did not involve the firearm found at the scene. Defendant's burglary conviction was based on allegations that, during the attack, defendant used a shovel to push the victim's door open enough to just barely cross the threshold into the home with the intent of committing an assault therein. Similarly, defendant's conviction for interference with a peace officer was based on allegations that, when police were attempting to arrest defendant, he disobeyed orders to surrender and instead fled from officers. Consequently, we conclude that the erroneous admission of the gun photo was harmless with respect to those convictions.

B.  *Jury Instructions*

Although we have determined that several of defendant's convictions must be reversed and remanded as a

result of admission of the gun photo, we must still address his other arguments for reversing the remaining convictions as well as the other issues that are likely to arise again during a retrial. Accordingly, we turn to defendant's third and fourth assignments of error, which concern the instructions that the jury received on self-defense from the victim's perspective.

Toward the end of the incident, defendant and the victim exchanged gunfire as defendant and Onofre were attempting to return to their vehicle. At trial, defendant requested jury instructions on self-defense. He argued that the evidence supported his theory that he reasonably believed the victim had unlawfully used deadly force against him and that returning fire was necessary to protect himself. In response, the state requested instructions on self-defense to allow the jury to find that the victim had not used force unlawfully. The trial court agreed and instructed the jury on assault in the third degree and defense of premises, both of which would allow the jury to determine that the victim's use of force was lawful.

On appeal, defendant argues that it was error for the trial court to give the state's instructions. He contends that the victim's belief regarding the necessity of the use of force is irrelevant in evaluating a defendant's self-defense claim. Instead, a self-defense claim is evaluated only from the perspective of the defendant. We agree.

Under ORS 161.209, a person is justified in using force to defend against "what the person reasonably believes to be the use or imminent use of unlawful physical force" by another. Critically, "a person's right to use force in self-defense depends on the person's *own* reasonable belief in the necessity for such action." *State v. Oliphant*, 347 Or 175, 191, 218 P3d 1281 (2009) (emphasis in original). It does not depend on whether the force used against him was actually unlawful. *Id.*

While the state does not dispute that the victim's perspective is irrelevant in evaluating a self-defense claim based solely on ORS 161.209, it argues that ORS 161.215 changes the analysis. In relevant part, ORS 161.215(2) provides that a defendant who is the initial aggressor in

a confrontation cannot claim self-defense unless, after the defendant withdraws from the confrontation, the other party "nevertheless continues or threatens to continue the use of unlawful physical force." Unlike ORS 161.209, the state argues, ORS 161.215(2) includes no language about whether a defendant "reasonably believes" that "the force" being used against him is unlawful. Instead, it asks only whether the victim's use or threatened use of force is actually unlawful. As a result, the state contends that a case involving ORS 161.215 requires an instruction on self-defense from the victim's perspective in order for the jury to consider whether the victim's use of force was actually unlawful.

We reject the state's argument because, like ORS 161.209, ORS 161.215(2) does not require consideration of the lawfulness of the victim's use of force. When interpreting a statute, we examine the text of the statute in context, as well as any helpful legislative history, in order to ascertain the intent of the legislature. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). ORS 161.215(2) contains an important textual clue indicating that the legislature intended it to be interpreted consistently with ORS 161.209. In ORS 161.215(2), the phrase "use of unlawful physical force" is preceded by the definite article "the." When used as a definite article, the word "the" functions "to indicate that a following noun or noun equivalent refers to someone or something previously mentioned or clearly understood from the context or the situation." *State v. Alexander*, 255 Or App 594, 599, 298 P3d 55 (2013) (citing *Webster's Third New Int'l Dictionary* 2368 (unabridged ed 2002)). In context, because ORS 161.215(2) imposes restrictions on the availability of self-defense under ORS 161.209, it follows that "the use of unlawful physical force" that the statute is referring to is the same use of force that a defendant "reasonably believes" to be unlawful from ORS 161.209.

Accordingly, whether or not the victim was actually justified in using force is equally irrelevant in evaluating a self-defense claim under ORS 161.215(2) as it is under ORS 161.209. The trial court therefore erred when it instructed the jury on self-defense from the victim's perspective. Notably, because self-defense is not a defense to either

burglary in the first degree or interfering with a peace offi-
cer, we conclude that the trial court's error was harmless
with respect to those convictions.

## C. *Jury Unanimity*

Finally, we address defendant's fifth and sixth
assignments of error regarding jury unanimity. Defendant
argues that the trial court's instructions to the jury that
it could return a guilty verdict by a vote of 10-2 violated
the Sixth Amendment to the United States Constitution.
Likewise, he argues that the court erred by accepting guilty
verdicts by a vote of 11-1 on Counts 2 and 3 (attempted
aggravated murder) and on Count 5 (assault in the second
degree).

We agree that the trial court erred in both respects
under the United States Supreme Court's decision in *Ramos
v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583
(2020), and that defendant's convictions resulting from
nonunanimous verdicts are also reversible on this basis.
However, the instructional errors were harmless with
respect to defendant's remaining convictions on Count 6,
burglary in the first degree, and Count 8, interfering with
a peace officer, both of which were unanimous. *See State v.
Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020) (holding
that a trial court's error in instructing the jury that it can
return nonunanimous verdicts is harmless with respect to
verdicts that are nonetheless unanimous). Accordingly, we
affirm defendant's convictions on Counts 6 and 8.

## V.   CONCLUSION

In sum, we conclude that the trial court erred in
three respects: first, by admitting the gun photo when
police were not authorized to search for and use it under
either the search warrant or the plain view doctrine; sec-
ond, by instructing the jury on self-defense from the victim's
perspective; and third, by instructing on and accepting
nonunanimous verdicts on Counts 2, 3, and 5. Those errors
require reversal of all of defendant's convictions apart from
his convictions for burglary in the first degree on Count 6
and interference with a peace officer on Count 8, which we
conclude were unaffected by the trial court's errors.

Convictions on Counts 1, 2, 3, 4, 5, and 7 reversed and remanded; remanded for resentencing; otherwise affirmed.

**KISTLER, S.J.,** concurring in part and concurring in the judgment in part.

I join the majority's opinion holding that, as the state reads this warrant, the command to search a cell phone for evidence of the owner's identity is not sufficiently particular. I also join the majority's opinion regarding the plain view exception. I concur, however, in its judgment regarding the command to search for evidence of the crime of felon in possession of a firearm. In my view, the command to search for evidence of that crime was sufficiently particular; however, the supporting affidavit did not establish probable cause that a picture of a gun would be found on the cell phone.

In *State v. Mansor*, 363 Or 185, 421 P3d 323 (2018), the court held that, if a search warrant establishes probable cause that particular information regarding a crime will be found on a computer, the unique nature of computers permits officers to seize the computer and conduct a broad search of the computer for that information. *See id.* at 207, 218 & n 15. *Mansor* gave effect to the protection against unreasonable searches and seizures found in Article I, section 9, by prohibiting the state from using information uncovered during a broad search of a computer unless the information came within the scope of what the warrant properly authorized or an exception to the warrant requirement. *Id.* at 220-21.

In this case, I agree with the majority regarding the command to search for the identity of the phone's owner and its analysis of the plain view exception. I part company with the majority in only one respect. The majority holds that a warrant that authorizes a search of a computer for evidence of the crime of felon in possession of a firearm is not sufficiently particular. Ordinarily, a warrant that merely authorized a search for evidence of a named crime does not satisfy the particularity requirement. *See id.* at 222. However, some crimes, by their nature, sufficiently limit the scope of the search to satisfy that requirement; possession of child pornography is one example. *See State v. McNutt*, 303 Or App 142, 155, 463 P3d 563, *rev den*, 367 Or 115 (2020)

(reaffirming that observation in *State v. Savath*, 298 Or App 495, 502, 447 P3d 1, *rev den*, 365 Or 722 (2019)). Felon in possession of a firearm is another.

　　　　To be sure, as the majority notes, it is unlikely that officers will find a gun in a cell phone. But a person's cell phone easily can contain evidence of gun possession, such as a picture of the gun or other indicia of gun ownership, and a command to search for evidence of the crime of felon in possession is or should be sufficiently focused to meet the particularity requirement. The difficulty for the state, in my view, is that the warrant does not establish probable cause that a picture of a gun or other indicia of gun ownership will be found on this cell phone. On that issue, the officer's affidavit in support of the warrant stated that, in his training and experience, "[s]uspects often use the camera and video functions of their phone to capture images related to their criminal activity, such as *** weapons used in the commission of their crime." Under our decisions, such generalized statements are insufficient, without more, to establish probable cause that evidence of gun possession will be found on this cell phone. *See State v. Hernandez*, 308 Or App 783, 791, 481 P3d 959 (2021). For that reason, I concur in part and concur in the judgment in part.[1]

---

[1] As the majority notes, defendant did not argue that the warrant failed to establish probable cause that evidence of gun possession would be found on the cell phone. Ordinarily, defendant's failure to raise that issue, coupled with my view that the fourth search command was sufficiently particular, would lead me to dissent in part. The majority, however, concludes that evidence derived from the fourth search command should be suppressed because that command was not sufficiently particular, and there may be some value in pointing out what I perceive to be an additional defect in the warrant so that that problem can be avoided in the future. *Cf. State v. Fonte*, 363 Or 327, 352-53, 422 P3d 202 (2018) (opinion concurring in the judgment) (discussing, for that reason, an additional problem with the state's theory of the crime that the defendant had not raised).