No. 285            April 8, 2026            337

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEITH MICHAEL BERIDON,
*Defendant-Appellant.*

Umatilla County Circuit Court
20CR48882; A181378

Jon S. Lieuallen, Judge.

Submitted January 21, 2026.

Frances J. Gray filed the briefs for appellant. Keith M. Beridon filed the supplemental briefs *pro se*.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals a judgment of conviction for second-degree murder with a firearm. As relevant to the matters on appeal, the state obtained three search warrants to collect information from defendant's cellphone carrier, and the state obtained an anonymously delivered letter from the Oregon State Police mailbox. Defendant raises seven assignments of error and one *pro se* supplemental assignment of error. All of defendant's arguments concern whether the trial court should have suppressed evidence, either from the warrants or the letter. His first two assignments of error challenge the first search warrant that the state obtained. His third assignment of error challenges the second search warrant. The remaining four assignments of error challenge the third search warrant. His sole *pro se* supplemental assignment of error challenges the evidence the state obtained from the letter. We affirm.

We briefly describe the undisputed facts to provide context for the assignments of error and then, to the extent necessary, provide specific facts when addressing those claims of error. In June 2020, a man found his grandson dead from apparent gunshot wounds. When the police searched the scene, they collected the victim's phone. Although the police were unable to unlock that phone, they were able to obtain call records from it. The call records revealed that the victim's phone had numerous contacts with a California number (805 number), including calls that apparently occurred shortly before the victim was believed to have been killed.

Later in June 2020, the police sought and received a search warrant (first warrant) to obtain and analyze, among other things, call detail records (CDRs) and cell-site location information (CSLI) for the 805 number from the cellphone carrier, Verizon. As particularly relevant to the issues on appeal, the warrant described the CDRs as,"[a]ll inbound and outbound communications, to include: session times and durations for calls, text messaging, two-way radio mode, and data services." Officers executed the warrant and obtained the CDRs for the 805 number. The CDRs did not contain the content of any phone calls or text messages.

Instead, the CDRs provided the phone numbers with which the subject number communicated and the times and dates of those communications.

In June 2022, defendant, who officers had identified as the user of the 805 number, moved to suppress evidence that the state had obtained through the first warrant, arguing that the warrant was not supported by probable cause, was overbroad, and did not sufficiently describe the evidence sought. While that motion to suppress was pending, the state obtained a warrant in July 2022 (second warrant), which was limited to CSLI. The state conceded that the temporal scope of the first warrant was overbroad. However, the state argued, and the trial court agreed, that the CDRs were not subject to suppression because defendant did not have a privacy interest in them. The court granted defendant's motion to suppress the CSLI evidence obtained through the first warrant. The court also granted defendant's motion to suppress the CSLI evidence obtained under the second warrant. Utilizing the CDRs the state obtained through the first warrant, the state obtained a third warrant for the CSLI in October 2022 (third warrant). The trial court denied defendant's motions to suppress the CSLI obtained under the third warrant.

*First Search Warrant:* Defendant contends that the trial court erred in denying his motion to suppress the CDRs that the state obtained through the first warrant.[1] He contends that under both the state and federal constitutions, the state violated his privacy interest in the CDRs when it obtained them without a valid search warrant. We first consider defendant's claim under the Oregon Constitution. *See State v. Hawthorne*, 316 Or App 487, 495, 504 P3d 1185 (2021), *rev den*, 369 Or 856 (2022) (we consider and decide questions of state law before turning to any federal claims). We review a trial court's denial of a motion to suppress for errors of law and are bound by the trial court's factual findings that are supported by constitutionally sufficient

---

[1] Defendant, in his second assignment of error, also argues that the trial court erred in ruling that the CDRs seized under the first warrant were not subject to suppression, because the CDRs were not obtained from Verizon through "valid legal process," in violation of Verizon's privacy policy. That argument is unpreserved, and we do not address it.

evidence. *State v. DiMolfetto*, 342 Or App 456, 464, 576 P3d 1009 (2025).

Under Article I, section 9, of the Oregon Constitution, individuals are protected against unreasonable searches and seizures. A search, for purposes of Article I, section 9, occurs when the government "invades a protected privacy interest." *Hawthorne*, 316 Or App at 495; *State v. De Witt Simons*, 375 Or 70, 79, ___ P3d ___ (2026) (explaining that a search under Article I, section 9, differs from a search under the Fourth Amendment to the United States Constitution).

As particularly relevant here, in some instances, a person does not have a protected privacy interest in information that that person has voluntarily allowed a third party to maintain and access for the third party's business purposes. *Hawthorne*, 316 Or App at 498-99 (citing *State v. Johnson*, 340 Or 319, 336, 131 P3d 173 (2006)). That third-party doctrine applies to call records. *See Johnson*, 340 Or at 336 (although a defendant has a privacy interest in the *content* of their telephone calls, a defendant does not have a privacy interest in the phone records kept by the defendant's cellular service provider for the provider's own business purposes).

The CDRs here were generated and maintained by Verizon for business purposes. The records, like those in *Johnson*, also did not contain the content of any communications; the records merely showed when and with what numbers the subject number communicated. Because defendant did not have a protected privacy interest in the CDRs, no search occurred for purposes of Article I, section 9. Therefore, the trial court correctly denied defendant's motion to suppress under the Oregon Constitution.[2]

Defendant's arguments under the United States Constitution similarly fail. The Fourth Amendment protects citizens from "unreasonable searches and seizures." For

_____

[2] To the extent defendant argues that *Johnson* does not apply to CDRs, that argument is not well taken. While defendant argues that Oregon courts have recognized a protected privacy interest in CDRs, he does not point us toward any cases that support that proposition. Instead, he relies on cases concerning bank records, CSLI, and the content of emails and texts, none of which are comparable to the kind of call records at issue here.

purposes of the Fourth Amendment, a search occurs when the government invades that in which a person "has exhibited an actual (subjective) expectation of privacy," so long as "'the individual's subjective expectation of privacy is one that society is prepared to recognize as "reasonable."'" *Smith v. Maryland*, 442 US 735, 740, 99 S Ct 2577, 61 L Ed 2d 220 (1979) (quoting *Katz v. United States*, 389 US 347, 361, 88 S Ct 507, 19 L Ed 2d 576 (1967)). The government is generally free to obtain certain information a person has voluntarily provided to third parties without triggering Fourth Amendment protections. *Carpenter v. United States*, 585 US 296, 308, 138 S Ct 2206, 201 L Ed 2d 507 (2018). The Court has extended that principle to telephone numbers dialed by a cell phone user. *See Smith*, 442 US at 745-46. There, the police used a pen register to record the numbers dialed from the petitioner's telephone. *Id.* at 737. The Court held that the police were not required to get a warrant for the pen register because the installation and use of the pen register was not a "search" for purposes of the Fourth Amendment. *Id.* at 745-46.

The reasoning of *Smith* controls here.[3] Because defendant did not have a protected privacy interest in the CDRs, no search occurred for purposes of the Fourth Amendment. Therefore, the trial court correctly denied defendant's motion to suppress under the United States Constitution. Finally, defendant is also incorrect that Verizon's privacy policy provided him with a protected privacy interest in the CDRs.

*Second Search Warrant:* In his third assignment of error, defendant contends that the trial court erred in denying his motion to suppress all evidence the state obtained under the second warrant. Specifically, he argues that the court's order on defendant's motions to suppress could be interpreted as sanctioning the state's seizure of the CDRs

---

[3] Defendant contends that the premise that a person lacks a privacy interest in the numbers they dial has been called into question by recent cases. However, he directs us to a case that, though the court opined on potential limitations of *Smith* with recent technological advancements, did not ultimately reach the issue. *See United States v. Moalin*, 973 F3d 977, 992-93 (9th Cir 2020), *cert den*, 146 S Ct 388 (2025). Therefore, while defendant argues that "it is questionable whether the third-party doctrine espoused in *Smith v. Maryland* remains relevant to current digital-age technology[,]" he can point us to no case that ultimately overrules *Smith* for purposes of our analysis.

through the first warrant or as ruling that the temporal limitation in the second warrant "cured" the defects of the first warrant as to the police's seizure of the CDRs. The state argues that the trial court did not deny the suppression of any evidence the police seized under the second warrant, leaving no adverse ruling from which defendant can seek appellate review.

With the second warrant, the state sought the same cell-site location information as it sought under the first warrant, though from a narrower timeframe. The state did not seek to obtain CDRs through the second warrant. Addressing defendant's motions to suppress evidence that the state obtained through the first and second search warrants, the trial court ordered suppression of the only categories of evidence the state sought under the second warrant. In the same order, the trial court also denied defendant's motion to suppress as to "the remainder of the evidence obtained by the state pursuant to the two search warrants."

Although defendant claims to assign error to the trial court's "broader, ambiguous set of statements referencing the [first] warrant because they provide a platform to retroactively rehabilitate the [first] warrant as to the CDR," defendant does not identify any evidence seized under the second warrant that the trial court did not order suppressed. The trial court's ruling on the second warrant was entirely favorable to defendant. Therefore, defendant's argument that the trial court erred in denying his motion to suppress all evidence the state obtained under the second warrant fails.

*Third Search Warrant:* Defendant raises four assignments of error related to the trial court's denial of defendant's motion to reconsider suppression of the CSLI the state obtained under the third search warrant. The trial court held that the third warrant did not rely on unlawfully obtained information, was not lacking probable cause, and was properly served. We conclude that the trial court correctly denied defendant's motion to reconsider suppression of the CSLI the state obtained under the third search warrant.

In defendant's fourth assignment of error, he contends that the trial court erred in ruling that the third warrant did not rely on the "unlawfully obtained CDR." In arguing that he established the minimal factual nexus to challenge the police's search, defendant claims that the state's use of the CDRs that it obtained under the invalid first warrant to develop probable cause for the third warrant tainted the third warrant. Given that the CDRs were not suppressible because the state did not violate defendant's constitutional rights when it obtained the CDRs without a search warrant, the CDRs could not be the source of taint. *See generally State v. Turay*, 371 Or 128, 164, 532 P3d 57 (2023) (for disputes involving a warrant-based search and unlawful police conduct, "'the first question is whether the defendant can establish a minimal factual nexus between [a constitutional violation] and the challenged evidence'" (quoting *State v. DeJong*, 368 Or 640, 642, 497 P3d 710 (2021)). Therefore, defendant's arguments relying on that premise fail.

However, defendant also argues that, even if a warrant was not necessary to obtain the CDRs—as we have concluded above—the CDRs were tainted as a source for developing probable cause for the third warrant because Verizon disclosed the CDRs in response to the invalid first warrant.[4] We have held that, in the context of a computer search and absent an exception to the warrant requirement, Article I, section 9, prohibits the state from "using" information that it discovered on a computer that was not identified in the warrant authorizing the state's search. *State v. Mansor*, 363 Or 185, 222-23, 421 P3d 323 (2018). The use of "nonresponsive evidence found in the warranted search of a computer" to provide a basis for a new investigation leading to a new warrant would run afoul of Article I, section 9. *State v. Serrano*, 324 Or App 453, 466, 527 P3d 54, *adh'd to as modified on recons*, 325 Or App 296, 528 P3d 1219 (2023), *rev den*, 372 Or 192 (2024). Relying on *Serrano*, defendant appears to argue that the CDRs were nonresponsive or unauthorized

---

[4] The trial court ordered that the CSLI evidence that the state obtained through the first warrant be suppressed because, as the state conceded, the temporal scope of the first warrant was overbroad. However, the trial court held that the other categories of evidence that the state obtained under the first warrant, including the CDRs, were not subject to suppression, because defendant did not have a protected privacy interest in them.

material that could not then be used as a source of investigatory material for the third warrant.

Defendant's reliance on *Serrano* and its application of *Mansor* is misplaced. First, it assumes that the principles articulated in *Mansor* apply in the context of the state's search of third-party account records. *See Contra State v. Hargrove*, 327 Or App 437, 451, 536 P3d 612 (2023) (declining to extend the standard for particularity of warrants set forth in *Mansor* to searches of records maintained by third-party companies when the defendant's arguments for expanding *Mansor* were not developed). Assuming, however, that the restrictions articulated in *Mansor* do apply to searches of third-party account records, they would not extend to information that, as is the case here, a defendant has no protected privacy interest in. Therefore, defendant's arguments that the CSLI that the state obtained through the third warrant was tainted by the state's unlawfully obtaining the CDRs fail.

In his fifth assignment of error, defendant contends that the trial court erred in ruling that the third warrant did not lack probable cause. He argues that the third warrant application was not supported by probable cause because the facts that established probable cause were the tainted fruit of the "unlawfully obtained" CDRs. His argument once again relies on the premise that the state obtained the records unlawfully, which, as discussed earlier, is not the case. Therefore, his argument fails.

In his sixth assignment of error, defendant argues that the trial court erred in ruling that the police properly served the third warrant. He contends that service was somehow improper because the state knew and failed to disclose to the magistrate that the CSLI at issue would be found in Verizon's archives rather than its records. Although defendant argues that the trial court erred in ruling that the third warrant was properly served "because it had been informed that the state did not, and could not, obtain the CSLI from 'the location to be searched,'" we fail to see how that is an issue with service. If defendant intended to make an argument regarding particularity, we cannot make that argument for him. His sixth assignment of error fails.

Apparently synthesizing his arguments from his fourth, fifth, and sixth assignments of error, in his seventh assignment of error, defendant contends that the trial court erred in denying his motion to suppress the CSLI evidence that the state obtained through the third warrant. As discussed above, all three underlying arguments fail. Defendant did not suffer a constitutional violation when the state obtained the CDRs without a valid warrant and thus the third warrant did not rely on unlawfully obtained information or evidence tainted by any unlawfully obtained information.

*Pro Se Supplemental Assignment of Error:* In one *pro se* supplemental assignment of error, we understand defendant to contend that the trial court erred in denying his motion to suppress evidence obtained from a letter found in OSP's mailbox, because the police violated his rights when they opened and read the letter without a warrant.[5]

An OSP employee discovered the letter at issue in the mailbox for OSP's lab. OSP turned the letter over to the police. While the envelope had a name and address for both delivery and return, it had no markings indicating it had ever been mailed. Defendant's name did not appear on the envelope. Police contacted the person listed as the sender of the envelope—someone the police believed at the time to be defendant's girlfriend—who disclaimed any knowledge of or interest in the envelope and its contents. The police had been previously unable to contact the addressee—defendant's mother. The police opened the envelope and reviewed the letter within. Although the letter was unsigned, the police suspected that defendant had been the one to write it. Defendant moved to suppress evidence of the letter. The trial court found that there was no evidence prior to the letter being opened and reviewed that indicated that defendant had a possessory or privacy interest in the contents of the envelope. It further held that, even if the letter was lost

_____

[5] In his *pro se* supplemental reply brief, defendant contends for the first time that the state's use of the letter violated defendant's right to a fair trial because the line of questioning at trial regarding the letter "left the jury to see defendant in an unfavorable light as if he were wearing prison clothes." Because defendant did not claim that matter as error in his opening brief, we do not consider it. *See* ORAP 5.45(1) (explaining that no matter claimed as error will be considered on appeal unless it was assigned as error in the opening brief).

or mislaid property, rather than abandoned, "the warrant-less search for identity" was justified by the circumstances.

A defendant's interests under Article I, section 9, in a package are not violated by the state when the defendant does not have an "identifiable interest at the time of the detention of the package." *See State v. Kosta*, 304 Or 549, 553-54, 748 P2d 72 (1987) (concluding that the defendant lacked any privacy or possessory interest in a package when the defendant did not cause the package to be transported and was not the addressee, the intended recipient, or an individual with an otherwise identifiable interest in the package when it was detained). Here, defendant was not listed as the sender or addressee on the envelope. He thus had no identifiable interest in the envelope at the time the police obtained it, and the trial court correctly denied defendant's motion to suppress evidence obtained from the envelope.

Affirmed.